UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TODD FENER, Derivatively on Behalf of ARTHUR J. GALLAGHER & CO., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT E. GALLAGHER; J. PATRICK GALLAGHER, JR.; BERNARD L. HENGESBAUGH; ELBERT O. HAND; ILENE S. GORDON; GARY P. COUGHLAN; T. KIMBALL BROOKER; JAMES R. WIMMER; and DAVID S. JOHNSON, <br><br> Defendants, <br><br> and <br><br> ARTHUR J. GALLAGHER & CO., a Delaware corporation, <br><br> Nominal Defendant. | No. 04 C 8093 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Todd Fener, filed a shareholder derivative suit against Defendants, alleging breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment. Presently pending before the court is the Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for Plaintiff's failure to allege a "pre-suit demand" on the Board of Directors.

**BACKGROUND**

A reading of Fener's Amended Shareholder Derivative Complaint supports the following summary of the alleged conduct of the parties.

Arthur J. Gallagher & Co. ("the Company") was founded by Arthur J. Gallagher ("Arthur") in 1927. The Company is engaged in providing insurance brokerage, risk management, and related services to clients in the United States and abroad. Its principal activity is insurance brokerage, including the negotiation and placement of insurance for its clients. The Company is the nation's fourth largest insurance broker and is incorporated in the State of Delaware.

In 1950, Arthur divided the Company between himself and his three sons, wherein he retained forty percent of the Company and each of his sons received a twenty percent of the Company and appointment to the Board of Directors ("the Board"). In 1984, the Company went public; and, in 1986, it was listed on the New York Stock Exchange.

Defendant Robert Gallagher ("Robert"), one of Arthur's sons, began acting as the Chief Executive Officer from 1963 through 1994 and President from 1963 to 1990. In 1990, Robert became Chairman of the Board; and his brother, John Gallagher ("John") became Vice Chairman. At that same time, Defendant Patrick Gallagher ("Patrick") – John's son and Robert's nephew – became the President and Chief Operating Officer. A few years later, Patrick became the Chief Operating Officer and CEO. Currently, Robert is still Chairman of the Board; and Patrick is still a Director, President and CEO.

Defendant David S. Johnson is, and has been since 2003, a Director of the Company. Johnson has served: as President of North American Commercial for Kraft Foods, Inc. since 2003; as President of North American Operations, Technology, Procurement, Information Systems and

Sales for Kraft Foods North America, Inc. from 2002 to 2003; as Group Vice-President of Kraft Foods North America, Inc. from 2000 to 2002; and as Executive Vice-President of Kraft Foods, Inc. from 1998 to 2000.

Defendant Bernard Hengesbaugh is, and has been since 2004, a Director of the Company. Hengesbaugh has served as Chairman of the Board of CNA Financial Corporation, an insurer of commercial enterprises, since 2002; and prior to that, he served as Chairman and CEO of CNA Insurance Companies from 1999 to 2002 and in various executive capacities with CNA since 1990. The Company and certain of its subsidiaries engage in brokerage and other transactions on behalf of CNA Financial and certain of its subsidiaries. Because of Hengesbaugh's dual fiduciary capacities to the Company and CNA, and the importance of the Company's ongoing business to CNA, Hengesbaugh is financially beholden to Robert, Patrick, and the Company's management.

Defendant Elbert Hand is, and has been since 2002, a Director of the Company. Hand currently serves as the Chairman of the Board of Hartmarx Corporation, a consumer apparel products business, and previously served as Hartmarx's CEO from 1992 to April 2002 and as President and COO from 1985 to 1992.

Defendant Ilene Gordon was a Director of the Company. Gordon has served: as President of Food Packaging, Americas, Alcan, Inc. since 2004; as President of Pechiney Plastic Packaging, Inc. and Senior Vice-President of Pechiney Group since 1999 to 2004; as Vice-President and General Manager of Tenneco Packaging Folding Carton from 1997 to 1999; and as Vice-President of Operations for Tenneco, Inc. from 1994 to 1997.

Defendant Gary Coughlan was a Director of the Company. Coughlan served as a Senior Vice-President and CFO of Abbott Laboratories from 1990 to March 2001. Prior to that, Coughlan

served as Senior Vice-President of Kraft General Foods from 1989 to 1990 and as Senior Vice-President and CFO of Kraft, Inc., which he joined in 1972, where he served with Johnson.

Defendant T. Kimball Brooker was a Director of the Company. Brooker has served as President of Barbara Oil Company, an oil and gas exploration and investment business, since 1989 and as a Managing Director of Morgan Stanley & Co., Inc. from 1975 to 1988.

Defendant James Wimmer was a Director of the Company. Wimmer, a lawyer, served as a partner of Lord, Bissel & Brook from 1959 to 1992 and was Of Counsel from 1992 to 1999, representing companies and individuals in securities and insurance-related matters. During the relevant period, Wimmer sold 19,000 shares of the Company stock for proceeds of $627,510.

Defendants Brooker, Gordon, Hand, and Wimmer compromise the Company's Compensation Committee Board, which determines and approves the compensation of the CEO and makes recommendations to the Board with respect to the Company's compensation plans and equity-based plans. Because the members of the Compensation Committee Board control the other Defendants' awards, the remaining Defendants will not institute this action against Defendants Brooker, Gordon, Hand, and Wimmer.

Defendants Hengesbaugh, Coughlan, and Johnson also lack independence from the other Defendants because the other Defendants exert influence over their compensation by virtue of their positions as CEO, Chairman of the Board, and members of the Compensation Committee Board.

Defendants Coughlan, Brooker and Wimmer were also members of the Audit Committee. The Audit Committee is responsible for assisting the Board in its oversight of the integrity of the Company's financial statements, the Company's compliance with legal and regulatory requirements,

and the performance of the Company's internal audit function. Defendants Coughlan, Brooker, and Wimmer breached their duties by causing or allowing improper financial documents. As a result of these breaches of their duties, any demand upon them is futile.

Defendants Gordon, Hand, Hengesbaugh, Johnson, and Wimmer are part of the Nominating/Governance Committee. The Nominating/Governance Committee is responsible for identifying and recommending individuals qualified to be directors of the Company and members of the Board's committees, conducting annual performance evaluations of the Nominating/Governance Committee, providing oversight of the evaluation of the management of the Company, developing and recommending to the Board for its approval an annual self-evaluation process of the Board and its committees, and overseeing the annual self-evaluations. The Defendants on this committee failed to fulfill their duties and responsibilities by causing or allowing the alleged conduct. As a result of these Defendants' breaches of their duties, any demand upon them is futile.

In October 2004, the Defendants announced that the Company had received a subpoena from the Connecticut Attorney General concerning allegations of bid-rigging and violations of the state's antitrust laws. In connection with the announcement of the subpoena, the Defendants announced that the Company would eliminate "contingent commission" arrangements effective January 1, 2005. The loss of the contingency commissions was expected to reduce the Company's earnings by thirteen percent. Merrill Lynch has issued reports indicating that the Company's earning expectations would be reduced.

Presently, the Company is the subject of investigations and regulatory proceedings by authorities by fifteen states attorney generals and state departments of insurance. The Company is

also a defendant in seven other lawsuits brought by private litigants relating to certain business practices, including contingent commissions.

The Defendants have caused the Company to engage in a course of unfair, deceptive, and anti-competitive conduct. The Defendants breached their duties of loyalty, due care, and good faith by allowing or causing the Company to misrepresent its financial results and prospects from July 2003 to the present. Defendants' conduct have cost the Company significant sums of money and will continue to cost significant sums of money. The conduct has also damaged the Company's corporate image and goodwill.

Because the Directors and Officers of the Company were personally involved in or were aware of the alleged wrongdoing and improper and/or illegal violations, demand on them to take the appropriate legal action to protect the Company and its shareholders would be futile. All of the Defendants participated in the issuance of false and/or misleading statements, including the preparation of false and/or misleading press releases and/or Securities and Exchange Commission filings. The Directors would not sue themselves or the Gallagher family members who dominate and control the Board. Because the Defendants engaged in the alleged misconduct, any suit could result in civil suits and/or criminal charges against the Board members and Directors. Thus, any demand on the Defendants would be futile.

## ANALYSIS

The Defendants contend that the suit should be dismissed because Plaintiff failed to allege a "pre-suit demand" on the Company's Board of Directors. Plaintiff contends that a pre-suit demand was not required because such demand would be futile because the Board lacks interestedness and independence.

In reviewing a motion to dismiss, the court reviews all allegations in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000).

Federal Rule of Civil Procedure 23.1 requires that a plaintiff "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed. R. Civ. P. 23.1. The requirement of a shareholder demand is more than a pleading requirement; it is a substantive right of the shareholder and the directors. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97 (1991) (*Kamen*). Whether a shareholder should be allowed to proceed without making such a demand "is based on the application of the State's futility doctrine . . . ." *Kamen*, 500 U.S. at 104. Because the Company was incorporated under the laws of Delaware, Delaware law applies in determining whether a demand, as required by Rule 23.1, may be excused when a shareholder files a derivative suit on behalf of the company. *See Kamen*, 500 U.S. at 98-99.

In a derivative suit, a shareholder seeks to enforce a right that belongs to the corporation. *See Kamen*, 500 U.S. at 95. Most jurisdictions, including Delaware, require that a pre-suit demand be made of the corporation's board of directors given "the basic principle of corporate governance that the decisions of a corporation – including the decision to initiate litigation – should be made by the board of directors or the majority of shareholders." *Kamen*, 500 U.S. at 96. A pre-suit demand allows the directors to exercise their business judgment and determine whether litigation is in the best interest of the corporation. *See Kamen*, 500 U.S. at 96.

Under Delaware law, "demand can only be excused where facts are alleged with particularity which create a reasonable doubt that the directors' action was entitled to the protections of the

business judgment rule." *Aronson v. Lewis*, 473 A.2d 805, 808 (Del. 1984) (*Aronson*), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000) (*Brehm*). "[T]he entire question of demand futility is inextricably bound to issues of business judgment and the standards of that doctrine's applicability." *Aronson*, 473 A.2d at 812. The business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson*, 473 A.2d at 812. The plaintiff has the burden of establishing facts to rebut this presumption. *Aronson*, 473 A.2d at 812.

Demand futility is established if the alleged particularized facts raise a reasonable doubt that either: (1) the directors are disinterested and independent or (2) the challenged transaction was a product of a valid exercise of the directors' business judgment. *Aronson*, 473 A.2d at 814.[1] A disinterested director "can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from [the challenged transaction] in the sense of self-dealing, as opposed to a benefit which develops upon the corporation or all stockholders generally." *Aronson*, 473 A.2d at 812. Independence exists when "a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816. In making the demand futility determination, no single factor may itself be dispositive. "[T]he question is whether the accumulation of all the factors creates the reasonable doubt to which *Aronson* refers." *Harris v. Carter*, 582 A.2d 222, 229 (Del. 1990).

Plaintiff argues that Robert and Patrick's familial ties and dependence on the Company for employment and a means of making a living demonstrate that they lack independence and that they

---

[1] The parties agree that only the first futility test is applicable to the present case.

have domination and control over the remaining Board members as evidenced by the Board members' current or past business and personal and employment relationships. The familial ties of Robert and Patrick and their dependence on the Company for employment and a means of making a living raise reasonable doubt about their independence and interestedness. *See Beam v. Stewart*, 845 A.2d 1040, 1051 (Del. 2004) (*Beam*); *Mizel v. Connelly*, 1999 WL 550369 (Del. Ch. July 22, 1999) (*Mizel*). However, Plaintiff's conclusory allegations that the remaining directors are beholden to Robert and Patrick because of their current or past business and personal and employment relationships fail to raise reasonable doubt about their independence. The remaining seven dirctors are neither dependent on the Company for income nor have familial ties to Patrick and Robert. Allegations of friendship or a business relationship must be accompanied by "substantially more in the nature of serious allegations that would demonstrate a reasonable doubt as to a director's independence." *Beam*, 845 A.2d at 1052.

Plaintiff argues that Wimmer is interested because he sold stock while in possession of undisclosed adverse material. However, Plaintiff's conclusory allegation of insider trading is insufficient to demonstrate reasonable doubt as to Wimmer's interestedness. *See Guttman v. Haung*, 823 A.2d 492, 502 (De. Ch. 2003) ("it is unwise to formulate a common law rule that makes a director 'interested' whenever a derivative plaintiff cursorily alleges that he made sales of company stock in the market at a time when he possessed material, non-public information."); *Rattner v. Bidzos*, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) (finding allegations of selling securities while in possession of material inside information, alone, insufficient for futility pleading requirements).

Plaintiff argues that the directors, especially those members of the Audit Committee, are disinterested because there is a substantial likelihood that the directors could be held personally

9

liable for the alleged misconduct. However, "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors . . . ." *Aronson*, 473 A.2d at 815; *Pogostin v. Rice*, 480 A.2d 619, 625 (Del. 1984) (rejecting "plaintiffs' bootstrap allegations of futility, based on claims of directorial participation in and liability for the wrongs alleged, coupled with a reluctance by directors to sue themselves . . . .").

## CONCLUSION

For the reasons stated above, the Complaint fails to demonstrate a reasonable doubt that the majority of the directors of the Company are disinterested and independent. Accordingly, Plaintiff is not excused from making a pre-suit demand. Accordingly, Defendants' Motion to Dismiss is granted. Plaintiff is given leave to file an amended complaint within thirty days of this Order if he can do so consistent with Federal Rule of Civil Procedure 11.

Dated: September 8, 2005

JOHN W. DARRAH
United States District Judge